UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ALAN R. McMAHEL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:04-CV-85-AS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, Alan R. McMahel ("Plaintiff"), appeals the denial of his application for Social Security Disability Income Benefits ("DIB").  He challenges the Administrative Law Judge's ("ALJ") finding that he was not disabled because, despite having impairments considered to be "severe" under the Act, he retained the residual functional capacity to perform light exertional work.

Plaintiff applied for DIB on April 28, 2000, alleging an onset date of March 29, 2000.  His application was denied initially and on reconsideration (Tr. 35-41).  An ALJ held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert (VE) testified (Tr. 15).  The ALJ considered the case de novo and on May 31, 2002 found that Plaintiff was not disabled because he retained the residual functional capacity to perform light exertional work. (Tr. 19-21).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 24, 2004.  Plaintiff now seeks judicial review of the Commissioner's final decision under authority of 42 U.S.C. § 405(g).

## I.  BACKGROUND

Plaintiff was fifty-three years old at the time of the agency's final decision (Tr. 16, 386). He had a ninth grade education with past relevant work as a truck driver (Tr. 386). Plaintiff claimed that he could no longer work due to chronic obstructive pulmonary disease, left upper extremity problems, headaches, squamous cell carcinoma, obstructive sleep apnea, and right knee problems (Tr. 16).

Plaintiff reported that he vacuumed, dusted, took out the garbage, washed dishes, went fishing and camping, shopped, did yard work, read, listened to music, and watched television (Tr. 18, 83-89).

**A.    Medical Evidence**

Dr. Edward L. Langston, Plaintiff's family doctor, has opined that Plaintiff is disabled due to his chronic obstructive pulmonary disease and left upper extremity impairment (Tr. 254-55, 60). According to Dr. Langston, Plaintiff has chronic emphysema and some restrictive lung disease which as limited his capacity for employment to the point where he is unable to work at this time (Tr. 260). Additionally, Plaintiff's headaches complicate his capacity to function even for activities of daily living (Tr. 260). Dr. Langston opined that Plaintiff should not be employed and would be unemployable in the future (Tr. 260). However, Dr. Langston also opined that Plaintiff could stand for 25% of an eight hour day and could walk for 50% of an eight hour day (Tr. 361).

Dr. Christopher Stack, and orthopedist, testified as a medical expert. Plaintiff had suffered shrapnel wounds while serving in Vietnam, and Dr. Stack testified that Plaintiff had minimal use of his left upper extremity (Tr. 400-01). Plaintiff could use his left upper extremity

2

on an assistive basis (Tr. 403). He would not be able to do any kind of repetitive lifting with the left, upper extremity, and dexterity with the left would be severely compromised (Tr. 406). He could use his right upper extremity to occasionally lift 20 pounds (Tr. 405). According to Dr. Stack, Plaintiff's right knee, which had undergone arthroscopy in 1995 and had some degenerative changes, would not limit his ability to stand or walk (Tr. 404-05).

Dr. Patsy Mai Kranz, an internist, also testified as a medical expert. Dr. Mai Kranz opined that Plaintiff would be able to perform light work with environmental restrictions for cold, heat, wetness, humidity, dust, fumes, and gasses (Tr. 408).

**B.    Vocational Expert Evidence**

Ray Burger, a vocational expert ("VE"), appeared and testified at the hearing. The ALJ asked the VE the hypothetical question if an individual like plaintiff, with his education, age, and previous work experience, who had the ability to perform light work, was limited to use of the nondominant, upper extremity as an assistive device only and restricted from extremes of cold and heat, dust, fumes, gasses, and poor ventilation, and was unable to perform past work, could perform any other jobs (Tr. 413). The VE replied that such a person could perform jobs as a night watchman and usher (Tr. 413). There were 1,583 positions for night watchmen and 445 jobs as ushers (Tr. 413).

**C.    The ALJ's Decision**

The findings of the ALJ were as follows:

1.    The claimant met the disability insured status requirements of the Act at all times relevant to this decision.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to

3

this decision.

3. The medical evidence establishes that the claimant has "severe" impairments consisting of his left non-dominant upper extremity and chronic obstructive pulmonary disease. The claimant also has non-severe impairments consisting of headaches, squamous cell carcinoma, obstructive sleep apnea, and right knee problems.

4. The claimant does not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant retains the residual functional capacity to perform light exertional work (lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; sitting up to two hours; and standing and/or walking up to six hours) with no moderate exposure to extremes of cold, heat, gases, dust, fumes, and poor ventilation.

6. The claimant's allegations of pain, other symptoms, and functional limitations are not entirely credible.

7. The claimant is unable to perform his past relevant work as a truck driver.

8. The claimant is closely approaching advanced age.

9. The claimant has a limited education.

10. The claimant has no transferable skills.

11. Based on an exertional capacity for light work, the claimant's age, education, and work experience, Medical-Vocational Rule 202.11 would direct a conclusion of "not disabled."

12. Although the claimant's limitations do not allow him to perform the full range of

light work, using Rule 202.11 as a framework for decision-making, there are a significant number of jobs in the State of Indiana which he could perform. Examples of such jobs are: night watchman (1,583 jobs) and usher (445 jobs).

13. The claimant has not been disabled, within the meaning of the Social Security Act, at any time relevant to this decision

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision is authorized by 42 U.S.C. § 405(g). Section 205(g) provides that the findings of the Commissioner are conclusive if supported by substantial evidence. The Commissioner has a duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Richardson v. Perales,* 402 U.S. 389, 399-400 (1971)). Therefore, judicial review is limited to determining whether the Commissioner applied the correct legal standards in reaching her decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Ehrhart v. Sec. of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992).

## III.   DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have

5

begun or had its inception during the period of insured status. *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds*, 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982). Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured. *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe

>impairment; (3) whether her impairment meets or equals one listed by the
>Secretary; (4) whether the claimant can perform his past work; and (5) whether
>the claimant is capable of performing any work in the national economy. *Clifford*,
>227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford*, 227 F.3d at 868.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Id.*  The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner.  *Id.*

The Plaintiff disagrees with the ALJ's finding that he was not disabled.  In particular, the Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is contrary to law, regulations, and Social Security Rulings.  First, the Plaintiff argues that the ALJ erred by giving Dr. Langston's opinions little weight with respect to the served and ultimate issue of disability.  Second, the Plaintiff argues that the ALJ erred by relying on his statement in the record that skin removed from his hands was not malignant.  Third, the Plaintiff argues that the ALJ improperly contrasted Plaintiff's May 2002 hearing testimony that he stopped smoking more a year earlier.  Finally, the Plaintiff asserts that the ALJ improperly discounted his allegations of "significant" headaches.

**A.     The ALJ's Consideration of Dr. Langston's Opinion**

Plaintiff argues that the ALJ erred by giving little weight to Dr. Langston's opinions with respect to the reserved and ultimate issue of disability.  The Defendant asserts that the ALJ reasonably gave greater weight to Dr. Mai Kranz's opinion-.  This Court finds that the ALJ reasonably adopted Dr. Mai Kranz's opinion as more consistent with the objective medical

7

evidence and with Plaintiff's activities than Dr. Langston's opinion.

The ALJ considered the opinions of Dr. Langston, Plaintiff's family physician. The ALJ also considered the opinion of Dr. Mai Kranz, who testified that pulmonary function studies showed only a mild impairment, as well as improvement with Plaintiff's post-bronchodilator reading (Tr. 18). Dr. Mai Kranz further testified that Plaintiff's sleep apnea was well-controlled with the continuous positive airway pressure treatment. The ALJ then considered the testimony of the orthopedic expert, Dr. Stack, who testified that the record did not support any restriction to standing and walking or use of the dominant (uninjured) upper extremity from an orthopedic viewpoint (Tr. 18).

It is not unheard of that a personal physician "might have been leaning over backwards to support the application for disability benefits." *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982). This Court finds no error in the ALJ's credibility determination.

**B.     The ALJ's Reliance on Plaintiff's Statements**

Plaintiff argues that the ALJ erred by relying on his statement in the record that skin removed from his hands was not malignant. The ALJ found, "The claimant had cancerous lesions removed from his hands in June of 2000 (Ex. 4F at 4, 8), which were not malignant and have not returned (Ex. 10E)" (Tr. 16). Plaintiff argues that the statement is contradicted by a June 2000 pathology report.

It is irrelevant whether the tumors were malignant or not. At the hearing, nearly two years after the tumors had been removed, the Plaintiff offered no evidence that the tumors had returned. Moreover, the ALJ considered the Plaintiff's entire medical history, including allegations of headaches, squamous cell carcinoma, obstructive sleep apnea, and right knee

problems, in his decision. Thus, it was proper for the ALJ to find that the Plaintiff does not satisfy the requirements at step three and that his impairments do not significantly interfere with his ability to perform basic work activities and are non-severe.

## C. The ALJ's Consideration of Plaintiff's Testimony

Plaintiff argues that the ALJ improperly contrasted Plaintiff's May 2002 hearing testimony that he stopped smoking "way over a year" ago with a March 2002 medical record suggesting that Plaintiff was "currently smoking" (Tr. 380, 393). Plaintiff argues that the form in question indicated that a "current smoker" included anyone who had quit within the past year (Tr. 380). Defendant points out the hand-written notation on the form that Plaintiff "wants to quit smoking" (Tr. 380).

The ALJ found that the Plaintiff's credibility was "rated as fair and his allegations of limitations that are not supported in the medical evidence, particularly the objective medical evidence, cannot be fully credited" (Tr. 17). In reaching his conclusion, he discussed the Plaintiff's daily activities, whether the Plaintiff was performing substantial gainful activity, the medical evidence, precipitating and/or aggravating factors, the Plaintiff's allegations of pain, the Plaintiff's functional limitations, and the dosage, effectiveness, and side effects of medication. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The other factors to be considered by the ALJ are: (1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Id.* The ALJ was

9

aware of these requirements and followed them in making his decision. The credibility determinations of an ALJ are entitled to special deference, and this Court sees no reason to overturn his findings. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

**D.     The ALJ's Consideration of Plaintiff's Allegations of Headaches**

Plaintiff asserts that the ALJ improperly discounted his allegations of "significant" headaches. The Defendant argues that while the Plaintiff's headaches may have been significant, he has not shown how they limited his daily activities or otherwise impaired his credibility to perform light work.

The ALJ properly considered the Plaintiff's headaches in rendering his decision. The ALJ observed that there was no listing for headaches, but evaluation of the Plaintiff's condition had been performed using the criteria of the neurological listing (section 11.00, Appendix 1, Subpart P, Regulations No. 4), and no impairment appeared whose criteria were met or equaled (Tr. 16). The ALJ used the proper procedures in making his findings.

### IV.     CONCLUSION

Based on the foregoing, the decision of the Commissioner was supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date: February 21, 2006                                          **S/ ALLEN SHARP**
                                                                                 **ALLEN SHARP, JUDGE**
                                                                                 **UNITED STATES DISTRICT COURT**